### No. 1205.

### THE STATE OF LOUISIANA VS. GEORGE C. WRIGHT.

The fact that, in a criminal prosecution, the trial judge informed the jury of what transpired during their absence, caused by his order retiring them pending an argument of counsel of a question of the admissibility of certain evidence, is not a sufficient error to vitiate the trial.

It is not competent for a witness to explain the meaning of words used by another person, whose conversation or utterances he has recited before the jury.

The trial judge cannot be required to charge any principle of law in the words or language suggested by counsel; it is sufficient that the charge embodies the substance of the principle urged if it be correct.

The burden is not on the State to prove that the accused was unarmed in a murder trial.

APPEAL from the Criminal District Court, for the Parish of Orleans. Baker, J.

*F. G. Hudson* and *C. H. Luzenberg,* District Attorneys, for the State, Appellee.

*Harry L. Edwards* for Defendant and Appellant.

The opinion of the Court was delivered by

POCHÉ, J. Convicted of manslaughter under an indictment for murder, appellant relies for relief on five bills of exception and on a motion for a new trial.

I.

His first complaint is touching some remarks made by the trial judge to the jury, under the following circumstances:

An objection had been made by the District Attorney to a question propounded to a witness on the stand when the jury retired under orders of the court pending the discussion on the question between counsel, but the District Attorney, having withdrawn his objection with the statement that he did so in order to facilitate the trial, the jury returned into court, whereupon the judge informed them of what had transpired during their absence, and cautioned them to "weigh and consider the testimony precisely as if no such objection had been made."

It is argued by counsel for defendant, and with some force, that if there existed any reason for the withdrawal of the jury during the discussion, its object was practically defeated by the information conveyed to them by the judge.

But without expressing any views touching the necessity or propriety of retiring the jury during such a discussion, and conceding that the judge erred in addressing to them the few remarks complained of, we are unable to appreciate, and counsel has failed to point out, any injury thereby caused to the accused on trial, and the attempt to magnify such a trifling incident into a grievous wrong does not impress us favorably.

II.

While the accused was on the stand as a witness on his own behalf, he was asked the following question by his counsel:

"Had Werther on this same day and shortly before his entry into the barroom and diningroom, sent for the pictures, and if so what answer was returned to him?"

On objection by the District Attorney the question was overruled, on the ground that the testimony which it tended to elicit was not competent and not pertinent to the issue on trial.

It appears from the recitals contained in the bills of exception in the record, that the accused had recently married the widowed sister of the deceased, who was intensely opposed to the match, and that bad blood had in consequence arisen between him and his sister and her husband.

It was also in proof that on the day of the homicide, and a short time previous thereto, the deceased had sent a messenger to his sister at her residence, in the same building in which she and her husband kept a bar and lunchroom, with the request for the return to him of certain pictures which were in her possession, and that she had sent him word that she would return them to him in about an hour. In a short time thereafter the deceased entered the premises of the accused in a boisterous and turbulent manner, and addressed his sister in very unbecoming and offensive language, demanding the instant delivery of the pictures in question, all this occurring in the diningroom, and in presence of the accused, who was then at breakfast. The wife then asked her brother to cross over into the barroom, where she left him and went up stairs in search of the pictures. While she was gone, the accused proceeded to the barroom in which began the altercation, which ended on the sidewalk, and which resulted in the infliction of the fatal wound by the accused on the deceased, with a revolver.

Under the theory of the defense, the proffered testimony was pertinent and necessary to show the intent of the deceased in going to defendant's house, and knowledge of those facts in the accused.

But it appears to us that the accused was not the proper witness to state a conversation in which he had taken no part, and which had already been recited to the jury. The record does not show by what witness the conversation or incident in question had been given, but we presume that it must have been by the messenger sent by the deceased to his sister. At all events, it is perfectly certain that all the facts connected therewith had gone to the jury, and from those and other facts and circumstances in proof, they were the sole judges of the motives and intent of the deceased in going to the house of the accused, and of the danger, either of death or bodily harm which the latter had the right or was justified to fear, from the words used, or acts done by the de-

ceased under all the circumstances characterizing his unusual visit to the house.

A repetition of that conversation by the accused as a witness, would at most have been cumulative evidence of facts admittedly in the possession and cognizance of the jury, and in his mouth, it would have been merely hearsay of a conversation which had taken place between his wife and the messenger sent to her by the deceased. He was, therefore, not the competent witness of that conversation, and the judge did not err in excluding his testimony thereon. In so far as the hostile feelings of the deceased towards him were concerned, the record shows that he had been allowed to testify touching threats against his life made by the deceased, and communicated to him previously to the homicide.

Hence it appears that the jury were in full possession of all the facts which could possibly throw any light on the subject of the hostile feelings of the deceased towards the accused, of his motives and intent in going to the latter's residence and place of business, and of the state of mind of the accused in reference to the fears which he had reasons to entertain from the conduct of the deceased.

We therefore conclude that the accused was not deprived of any of his legal rights by the ruling complained of.

### III.

The third bill involves the ruling of the trial judge in refusing to allow a witness, a female servant of the accused, to explain the meaning of a word used by the deceased in a conversation which took place between the latter and his sister, previous to her marriage with the accused, and in presence of the witness.

She had testified that the deceased had said to his sister that if she married Wright he would "threaten his life." She was then asked what she understood the deceased to mean in using the word *threaten*.

The judge very properly sustained the District Attorney's objection to that course of examination, on the ground that the witness, who was shown to be an illiterate servant, could not be allowed to give her opinion as to the meaning of words used by other persons. The jury were the sole parties authorized to weigh and consider the probable meaning of words used by another person, and the intent which he thereby desired to convey.

Counsel can hardly be serious in his contention on this point.

### IV.

The accused next complains of the refusal of the following special

charge to the jury, as requested by his counsel: "Every man must be tried according to his own lights."

It appears from the record that in his testimony the accused had stated that in pursuing the deceased, he had accidentally, and not purposely, shot off his pistol, which, as a theory, was somewhat inconsistent with that of self-defense, which was the foundation of the special charge requested. If the homicide was accidental, it could not be excusable as a means of self-defense, the essence of which is that the act was wilfully performed. And on that ground alone the refusal of the judge might have been sustained.

But he informs us that, notwithstanding the inconsistency of these various elements of defense, he took the pains of charging the jury on all the shades and degrees of homicide, including specially justifiable and excusable homicide, which comprises killing in self-defense.

It is well settled in criminal jurisprudence that the trial judge cannot be required to charge any principle of law in the form and language suggested by counsel, and that his charge will be sustained if it embodies in substance the principle of law which counsel may suggest in their own language.

We are satisfied that the accused was not prejudiced by the refusal of the trial judge to give, in the words of his attorney, the special charge which is the subject-matter of this bill. State vs. Durr, 39 Ann. 751; State vs. Boasso, 38 Ann. 202; State vs. Porter and Howe, 35 Ann. 1159; State vs. Primeaux, 39 Ann. 673.

## V.

It is next alleged that the trial judge erred to the prejudice of the accused in refusing the following special charge as requested by his counsel:

"The burden is on the party to prove what it is his duty to prove. When the fact is peculiarly in the knowledge or power of the party, it must be proved or produced, or he must suffer the consequences. It being in the power of the State to produce a witness or witnesses to show whether the deceased was armed or not, and having failed so to do, the presumption must be that the deceased was armed."

It was correctly refused as embodying an abstract principle of law not applicable to the state of facts established in the case. And viewed as an abstract proposition it is not sound as applicable to criminal jurisprudence. State vs. Ford, 37 Ann. 443.

It is not true that in a trial for murder the burden is on the State to

prove that the deceased was unarmed; and we are informed by the bill that at least one witness had testified that the deceased was unarmed.

It was part of the defendant's theory of self-defense that his life was in danger from the accused, and it would seem that the burden of proof was on him to show as an element of danger that the deceased was armed. In the absence of affirmative proof of the fact the judge had no warrant in law to assume or to presume that the deceased was armed, and hence he correctly refused to instruct the jury that the State was burdened with the duty of rebutting a state of facts not proved, or a presumption which had no existence in law or in the nature of things.

## VI.

In addition to the matters which have already been discussed and disposed of in this opinion, appellant's motion for a new trial charged error in the trial judge for having remarked in the presence and hearing of the jury, as his ground for refusing the special charge covered by the fifth bill of exception, that there was evidence "that the deceased was unarmed." The contention is that that remark was an expression on the part of the judge, of an opinion as to what facts had been proved, in violation of the prohibition contained in Sections 991 and 1963 of the Revised Statutes of 1870. But it appears from the record that the remark was addressed to counsel for the accused in a low tone of voice, and that it was impossible for the jury or any member of that body to have heard it. No attempt was made by appellant's counsel to prove the contrary, and we have no warrant to believe otherwise. We must say, however, that trial judges must, and should be very cautious in such matters.

After a thorough review of all the questions submitted to our consideration in this appeal, we reach the conclusion, painful though it may be, that we are powerless to relieve the defendant.

Judgment affirmed.